**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nitin Patel, M.D., F.A.C.C., an individual; and Cardiac Care, P.C., an Arizona Professional Corporation,<br><br>　　　　Plaintiffs-Counterdefendants,<br><br>v.<br><br>Verde Valley Medical Center, an Arizona non-profit corporation; and Northern Arizona Healthcare Corporation, an Arizona non-profit corporation,<br><br>　　　　Defendants-Counterclaimants. | No. CV-05-1129-PCT-MHM<br>CV-05-2926-PCT-MHM<br>(Consolidated)<br><br>**ORDER** |
| Christian Heesch, M.D., an individual,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Verde Valley Medical Center, an Arizona non-profit corporation; and Northern Arizona Healthcare Corporation, an Arizona non-profit corporation,<br><br>　　　　Defendants. | |

Nitin Patel is a board-certified cardiologist practicing in Cottonwood, Arizona, through Cardiac Care, P.C., a professional corporation. Patel and Cardiac Care, P.C. are two

of the plaintiffs in an action against Verde Valley Medical Center and Northern Arizona Healthcare, both non-profit corporations. The Second Amended Consolidated Complaint alleges various antitrust violations, as well as tortious interference with contract/business relationships, defamation, injurious falsehood, breach of contract, breach of implied covenant of good faith and fair dealing, wrongful institution and maintenance of an administrative proceeding, and violations of due process and fundamental fairness. (Dkt. #202).

VVMC and NAH brought a counterclaim against Patel for defamation. Patel has moved for summary judgment. (Dkt. #164). After consideration of the pleadings, the Court issues the following order.

## I. Standard of Review

A motion for summary judgment may be granted only if the moving party shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

## II. Background

The defamation claim at issue arises out of statements made by Patel to a newspaper reporter regarding Northern Arizona Healthcare and Verde Valley Medical Center (collectively "the Hospital"). The allegedly false statements were published in one or more newspapers in August and September of 2005. The statements were made several months after Patel had filed his original complaint against the Hospital.

The statements made by Patel about which the Hospital complains include the following:

    (a) "There is a corporate policy at NAH, a big strategy to prevent any competition from coming here";

    (b) "They [NAH] want to stifle any physician who wants to compete [with] the organization. They say, 'If that person is not sanctioned by us, we are going to stop that person from practicing here'";

    (c) "One physician, Dr. Christian Heesch, was drummed out of the hospital through [the Hospital's] peer review process, only to have those charges brought against him dismissed by the Arizona Medical Review Board";

    (d) "They are not judging the doctor by whether he is qualified or has experience";

    (e) "There is a concerted effort on the part of physicians and the hospital to prevent any healthcare organization from coming into the market . . . That's a conspiracy";

    (f) The peer review process at NAH is being abused to intimidate doctors [who fail] to "toe [sic] the line."

    (g) "This hospital has actually had meetings with how to evaluate doctors based on their behavior. Under the wile of peer review, they can use that to get to the doctor."

(Response, Dkt. #182).

In his Motion for Summary Judgment, Patel argues that he believed at the time he made these statements — and continues to believe after extensive discovery in his lawsuit against the Hospital — that each and every statement was true and accurate. (Motion for Summary Judgment, Dkt. #164). He believes, therefore, that he is entitled to summary judgment on the defamation claims.

III. Discussion

A.    <u>Actual Malice</u>

- 3 -

1  Patel argues in his Motion for Summary Judgment that the Hospital constitutes a
2  public figure, and thus, it must show by clear and convincing evidence that Patel acted with
3  *actual malice* in making the statements. (Dkt. #164).  In other words, Patel asserts that the
4  Hospital must demonstrate that he made the statements "with knowledge that [they were]
5  false or with reckless disregard of whether [they were] false or not."  Id. (citing New York
6  Times v. Sullivan, 376 U.S. 254, 280 (1964)).  The Hospital appears to agree that "actual
7  malice" is the appropriate standard, and so the Court will analyze the motion using that
8  framework.

9  As stated by Patel in his briefing, the Court need not (and will not) make a
10 determination at this stage whether his statements to the newspaper were actually true.
11 Rather, it must determine whether the Hospital has presented evidence sufficient to survive
12 a motion for summary judgment that Patel knew the statements were false, or that he acted
13 with reckless disregard as to their falsity.  Id.

14     1.    Statements Regarding the Hospital's Strategies to Avoid or Stifle Competition

15 The counterclaim against Patel alleges that he made — with actual malice — various
16 false statements about the Hospital's attempts to stifle competition.  The Hospital makes
17 various assertions in its Response to the Motion for Summary Judgment.

18 The Hospital points to the fact the Patel had admitting privileges at its facilities until
19 he voluntarily resigned them in 2004. "Thus," the Hospital says, "his competition has not
20 been stifled." (Response, Dkt. #182).

21 Patel's admitting privileges, however, do nothing to show that any of the allegedly
22 defamatory statements relating to competition were false, much less that he acted with actual
23 malice.  Patel's statements were that "[t]here is *a corporate policy* at NAH, *a big strategy* to
24 prevent any competition from coming here," and that "[t]hey *want to stifle* any physician who
25 wants to compete with the organization."  Id. at Exhibit A (emphasis added).  Although it is
26 debatable whether Patel was actually stifled, the facts pointed to by the Hospital do nothing
27 to support the objective falsity of his statements.  The evidence cited by the Hospital is better

- 4 -

suited to rebut the underlying antitrust claims; it does not provide evidence of the actual malice component of its defamation counterclaim.

Similarly, the Hospital points to Patel's deposition testimony to establish that he acted with actual malice with respect to his statements about stifling competition. In the deposition, Patel was asked to specify the types of anti-competitive conduct engaged in by the Hospital with respect to thirteen services performed by Patel at his Cardiac Care facility. (Response, Dkt. 182 Exhibit C). It argues that Patel could name no specific anti-competitive behavior relating to any of the thirteen services he provided, and therefore, his statements about stifling competition were false and made with actual malice. The Court disagrees with the Hospital's characterization of Patel's testimony.

In his deposition, Patel was asked to specify the anti-competitive actions taken *individually* with respect to *each specific service that he provided.*[1] Because "Patel was unable to identify any acts relating to any individual services other than (allegedly) invasive cardiology," the Hospital argues that he "could not have believed that [the Hospital] attempted to stifle all competition in the region when [it has] not taken action against many of his own competitive activities." (Response, Dkt. #182). But Patel did not make any statements to the newspaper about anti-competitive practices relating to specific services he provided. Rather, he made general allegations about the anti-competitive policies and strategies of the Hospital, which he reiterated in his deposition.[2] The Court cannot

---

[1] Q: "I'd like to do them one by one. Holter monitoring, anything specifically relating to Holter monitoring that the hospital did anti-competitive and unfair towards you?" (Response, Dkt. 182 Exhibit C).

[2] A: "I have not understood your question on what exact context you are talking about, because there is certain things that the hospital has done to stop me from performing these procedures also."
Q: "Well, tell me what those are then. What has the hospital done to stop you from performing any or all of the procedures 1 through 13 in Exhibit 1?"
A: "Well, it's a long story."
• • •
Q: "Anything - - let me do this. Are you contending that the hospital has done things

- 5 -

reasonably infer actual malice from this deposition testimony. See Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 680 (9th Cir. 1985) ("A party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth.").

2.   Statements Regarding Economic Credentialing

Patel made several statements that accused the Hospital of engaging in "economic credentialing," which Patel defines as: "not judging the doctor by whether he is qualified or has the necessary experience. It's based on what are the current strategies for NAH as an organization." (Response, Dkt. #182, Exhibit A).

With respect to Patel's statements regarding economic credentialing, the Hospital again attempts to assert that, because there is evidence that economic credentialing did not occur, Patel "must have known that his defamatory statements to newspapers were false." (Response, Dkt. #182). The evidence cited to support its assertion is the "admission" by Patel that the Hospital would have benefitted economically if Dr. Heesch had been granted privileges.[3] The Hospital points specifically to the fact that Patel had admitting privileges (until he resigned them), but that Dr. Heesch (who was recruited by Patel) had been denied privileges. Id. "Thus," the Hospital says, "if privileges were based on economic criteria and competition, Dr. Patel's privileges would have been denied while Dr. Heesch would have received privileges. Since Dr. Patel knew that the opposite had occurred, he must have known that his defamatory statements to the newspaper were false." Id.

The Court is not persuaded that this shows actual malice or presents a genuine issue of material fact. The Hospital appears to falsely assume that financial benefit to the Hospital

---

to stop you from practicing cardiology generally?"
   A:  "Yes, I am."
   Q:  "Okay. Let's put that to the side for now, though, trust me, we'll get to it." (Response, Dkt. 182 Exhibit C).

   [3]It is notable that the alleged "admission" comes from a proposal drafted by Patel a several years before the current lawsuit. The proposal was provided in order to sell the Hospital on the benefits of adding an additional cardiologist to Patel's practice. (Response, Dkt. #182, Exhibits G-H).

- 6 -

in the form of increased interventional procedures performed by Dr. Heesch is the only economic factor the Hospital could have taken into consideration if it had, in fact, engaged in economic credentialing. Patel points to evidence in the record that tends to support his contention that the failure to afford Dr. Heesch admitting privileges <u>was</u> based on economic credentialing. (Reply, Dkt. #189). Patel argues that the net economic effect of providing Dr. Heesch with admitting privileges would have been to expand Cardiac Care's practice and to *increase* competition, and that is why the Hospital denied him privileges.

The Court need not decide if the statements were actually true; it must simply determine whether the Hospital raised a genuine issue of triable fact that Patel acted with actual malice. Because Patel has put forth a plausible explanation for why he believed the Hospital's failure to provide Dr. Heesch with admitting privileges constituted economic credentialing, the Hospital has failed to show that Patel acted with actual malice. The Hospital has not produced any evidence that would allow it to survive summary judgment on this issue.

### 3.  Statements Regarding Efforts to Block Entry Into the Market

The Hospital argues that Patel acted with actual malice when he made defamatory statements about the Hospital blocking entry into the market. It lists the following evidence to support the fact that Patel knew that the Hospital could not stop all competition:

1) Despite not being sanctioned by the Hospital, "Dr. Patel believes that his practice 'has established itself as a dominant player in the Verde Valley'";

2) Dr. Patel stated in a document that the Hospital's Competition policy "will have no impact on our operations or future plans"; and

3) "Dr. Patel threatened to recruit 30-35 physicians to his practice and 'aggressively compete' with [the Hospital] unless [it] purchased his business."

(Response, Dkt. 182). The Court agrees that this evidence does tend to show that Patel must have believed that the Hospital could not stop all competition. The problem with this argument? Patel never said the Hospital could stop all competition. The quotes attributable to Patel seem to be expressing his belief about the Hospital's *intentions*, rather than its

abilities in every circumstance to effectively block entry into the market. Here is what Patel actually said:

- "There is *a corporate policy* at NAH, *a big strategy* to prevent any competition from coming here";
- "They [NAH] *want* to stifle any physician who wants to compete [with] the organization. *They say*, 'If that person is not sanctioned by us, we are going to stop that person from practicing here'";
- "There is *a concerted effort* on the part of physicians and the hospital to prevent any healthcare organization from coming into the market . . . That's a conspiracy."

Id. at Exhibit A (emphasis added). The Hospital has therefore failed to show actual malice.

## IV. Conclusion

The Hospital has attempted to show actual malice on the part of Patel by attempting to prove the objective falsity of his statements to the newspaper. Put another way, the Hospital has tried to demonstrate circumstantially that, because the statements are objectively false, Patel must have realized their falsity, and therefore he acted with actual malice. Its arguments and evidence, however, basically fail to make either actual knowledge of falsity or reckless disregard more probable.

Because the Hospital did not produce sufficient evidence such that a fact finder could find objective falsity, the Hospital has consequently not met its burden — through circumstantial evidence or otherwise — to show that Patel knew or acted recklessly with regard to the statements' falsity. See Barnes v. Arden Mayfair, Inc., 759 F.2d at 680. By failing to demonstrate a triable issue of material fact regarding actual malice, the Hospital's claims cannot survive summary judgment.

///

///

///

- 8 -

Accordingly,

**IT IS ORDERED** that summary judgment be granted in favor of Patel on the Hospital's claims for defamation.

DATED this 7th day of March, 2008.

_____
Mary H. Murgula
United States District Judge