1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9  Nitin Patel, M.D., F.A.C.C., an individual;)    No.  CV-05-1129-PCT-MHM
   and   CardiacCare,  P.C.,  an  Arizona)              CV-05-2926-PCT-MHM
10 Professional Corporation,                )
                                            )        (consolidated)
11          Plaintiffs-Counterdefendants, )
                                            )        **ORDER**
12 vs.                                      )
                                            )
13                                          )
   Verde Valley Medical Center, an Arizona)
14 non-profit  Corporation;  and    Northern)
   Arizona   HealthcareCorporation,    an)
15 Arizona non-profit corporation,          )
                                            )
16          Defendants-Counterclaimants.)
   _____)
17                                          )
   Christian Heesch, M.D., an individual,   )
18                                          )
            Plaintiff,                      )
19                                          )
   vs.                                      )
20                                          )
   Verde Valley Medical Center, an Arizona)
21 non-profit  Corporation;  and    Northern)
   Arizona   HealthcareCorporation,    an)
22 Arizona non-profit corporation,          )
                                            )
23          Defendants.                     )
   _____)
24

25         At the Court's most recent status hearing, the Court ordered additional briefing

26 regarding Defendants' Motions in Limine Nos. 1 (Dkt.# 312) and 6 (Dkt.#307).  Having

27 reviewed the supplemental briefing on these issues, the Court issues the following Order.

28

**I.    Defendants' Motion in Limine No. 1 to Exclude Plaintiffs' Evidence of Damages (Dkt.#312)**

Defendants move to exclude Plaintiffs' evidence of damages, arguing that because the damages claimed in Plaintiffs' expert report were based on the antitrust claims that have been dismissed by this court, the expert report should be excluded because the report is now irrelevant to the remaining claims and would unnecessarily confuse the jury if admitted. (Dkt.#300)  They also seek to exclude four other types of evidence for similar reasons.

**A.    The Dobson Report**

Defendants argue that the Dobson report must be excluded because the assumptions on which it was based are no longer true.  They contend that the Dobson report was based primarily on the theory that Defendants were responsible for Dr. Heesch leaving Verde Valley.  They reason that since the report analyzes the lost profits that Dr. Heesch would have generated had he gained privileges to perform cardiology procedures at VVMC, it should be excluded because these claims have been dismissed from the case.  The remaining tortious interference claims involve (1) Dr. Ravi and Cardiac Care, and (2) Dr. Heesch and YRMC.

In their supplemental briefing, Plaintiffs assert that Dr. Dobson merely created a methodology that measured the lost profits that arose from Cardiac Care's inability to hire an interventional cardiologist (not necessarily Dr. Heesch).  (Dkt.#351 at 1)  They argue that the methodology for calculating lost profits remains the same, regardless of which particular cardiologist is used (whether it is Dr. Heesch or Dr. Ravi), except for two minor changes. The start date for the interventional cardiologist would change (November 2001 versus April 2004) and the start date for the catheterization lab would change.  Plaintiffs maintain that "[e]xcept for these temporal changes, all other inputs and calculations remain the same." (Dkt.#351 at 3)  They further argue that there is no unfair element of surprise regarding these expert calculations because these figures are contained in an EXCEL spreadsheet and are easily manipulated by simply changing the inputs.   Since Defendants' own experts

- 2 -

1    manipulated the EXCEL spreadsheet in a variety of ways, Plaintiffs argue that there is no
2    prejudice to Defendants in making these limited, temporal changes.

3         Defendants' supplemental response argues that any changes in the assumptions on
4    which the expert report is based violates the timely disclosure rules contained in Rule 26.
5    Defendants claim that this would result in "trial by ambush" (Dkt.#358 at 2) and point to a
6    number of "critical questions" raised by the changed assumptions. However, upon further
7    review, it appears that Defendants' list of "critical questions" are more properly viewed as
8    going to the weight of the expert report than a basis for its exclusion. Changing the start
9    dates of the interventional cardiologist or the cath lab does not amount to unfair surprise
10   because data for all of the years in question appears to have been timely disclosed.
11   Eliminating some of the years from consideration appears to change the numerical outcome,
12   but not the methodological process.

13        Defendants submit a list of "critical questions" that they claim arise from the changes
14   and would make it unfair to allow Plaintiffs to change the start dates of the cardiologist and
15   cath lab. However, these questions merely attack the expert report as a whole in a manner
16   that could have been done using the old start dates. For example, Defendants state that "the
17   model assumes that Dr. Heesch could practice interventional cardiology at Yavapai
18   beginning in 2003, but Yavapai did not offer interventional cardiology in 2003. How does
19   Dr. Dobson explain that?" This is a valid question, but it is not one that is created by the
20   change in start dates. Instead, it is based on a practical difficulty that would have existed for
21   2003 regardless of the start dates that were used.

22        Defendants' remaining "critical questions" similarly question the logic of Plaintiffs'
23   claims; however, they do not explain why allowing Plaintiffs to modify the start dates of the
24   cardiologist and the cath lab will unfairly prejudice Defendants or necessarily make the
25   report invalid. The report may be challenged for other reasons, and Defendants will be able
26   to ask these questions on cross-examination. Daubert v. Merrell Dow Pharmaceuticals, Inc.,
27   509 U.S. 579, 594-96 (1993) ("Vigorous cross-examination, presentation of contrary

28
                                        - 3 -

evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). However, it does not appear that simply changing the start dates for the cardiologist or the cath lab actually prejudices Defendants in any significant way.

For this reason, this aspect of Defendants' motion will be denied.

**B.  The Supplemental Disclosure Statement**

Defendants argue that the Supplemental Disclosure Statement should be excluded because it includes various categories of alleged damages that depend on Plaintiffs' plans to open a cath lab or otherwise earn monies from Dr. Heesch's association. However, the Court appears to have already ruled on this issue and granted Defendants' Motion to Exclude the Second Supplemental Disclosure Statement (Dkt.#166) based on Plaintiffs' statement that they did not intend to introduce the statement at trial, as it is not evidence. (Dkt.#211 at 2)

With respect to the particular categories of evidence that Defendants wish to exclude, it appears that these categories are similar to the Dobson report discussed above in that they were originally based on claims that have been excluded. However, they still do appear relevant to Plaintiffs' theory of the case (namely that the inability to establish a cath lab was part of the domino effect of the tortious interference with Dr. Ravi's relationship with Cardiac Care).

As such, the motion is denied with respect to the categories identified in the Supplemental Disclosure Statement and denied as moot with respect to the Supplemental Disclosure Statement itself.

**C.  Items in Plaintiffs' Statement of Facts**

For similar reasons, Defendants seek to exclude certain of categories of alleged damages contained in Plaintiffs' Controverting Statement of Facts (Dkt.#183). As explained above, the cath lab appears to be relevant to Plaintiffs' theory of the case. Similarly, the costs of recruitment and business planning for Cardiac Care, as well as the costs of defending against VVMC's actions against Dr. Heesch appear relevant to the claim for tortious

- 4 -

interference with Dr. Ravi and Cardiac Care.  As such, the Court will deny this aspect of Defendants' motion.

### D.  Defendants' Proposed Defamation/Injurious Falsehood Damages

Defendants argue that Plaintiffs should be precluded from offering damages related to the defamation and injurious falsehood claims because they have not provided any estimates of damages from these claims.  Defendants point out that Plaintiffs failed to timely offer any independent estimation of these damages, but rather attempted to associate them with the damages associated with the tortious interference claims.

In its supplemental briefing, Plaintiffs point out that under Arizona law, a defamation and injurious falsehood plaintiff may "recover presumed damages without proof of actual loss and [the law also] require[s] the publisher to carry the burden of proving the defense of truth."  Dombey v. Phoenix Newspapers, 150 Ariz. 476, 480, 724 P.2d 562, 566 (1986).  They also cite an Arizona Supreme Court case that states that "under common law, if a publication was libelous per se, plaintiff did not have to allege or prove actual or special damages; general damage was presumed and could be awarded absent proof of any specific injury."  Boswell v. Phoenix Newspapers, Inc., 152 Ariz. 9, 11, 730 P.2d 186, 188 (1986).  Plaintiffs further argue that damage to reputation may be proven through lost profits, and they have specifically identified damages to business reputation and goodwill in their Second Supplemental Disclosure Statement (Dkt.# 328 at 9).

Defendants respond that Plaintiffs' argument "implicitly concede[s]" that if Plaintiffs do not succeed in proving defamation per se, they should not be allowed to present damages in the case.  (Dkt.#357)  However, this argument has never been raised before, is not supported by any authority, and Plaintiffs have not had an opportunity to respond to it.  For these reasons, in combination with the authorities cited by Plaintiffs, this aspect of Defendants' motion is denied.

### E. Punitive Damages

Defendants argue that there is no basis for seeking punitive damages now that the anticompetitive claims in this case have been dismissed. They further argue that any evidence purporting to represent them should be excluded from trial.

Plaintiffs' supplemental briefing explains that Arizona law allows the imposition of punitive damages whenever a Plaintiff can show either (1) intent to cause injury, (2) wrongful conduct motivated by spite or ill will, or (3) that the Defendant acted to serve his own interests, having reason to know and consciously disregarding a substantial risk that his conduct might significantly injure the rights of others or consciously pursued a course of conduct knowing that it created a substantial risk of harm to others. See RAJI Civil (4th) Personal Injury Damages 4 (2005); Rawlings v. Apodaca, 151 Ariz. 149, 162 (Ariz. 1986). Plaintiffs also cite to a number of statements contained in the Second Consolidated Amended Complaint in which they allege that such elements were present in various causes of action. They also argue that Dr. Ravi will testify regarding these acts.

Defendants respond by questioning Dr. Ravi's qualifications to testify as to these acts, but they do not challenge the authorities upon which Plaintiffs' assertions are based. They merely question the applicability of Haralson v. Fisher Surveying, Inc., 201 Ariz. 1, 31 P.3d 114 (2004), which Plaintiffs cite for a minor point (that criminal conduct may be considered in evaluating whether punitive damages are appropriate). Even assuming that Defendants are correct (and Haralson does not apply because the alleged tortfeasor is not dead), the principal legal authorities upon which Plaintiffs' arguments rest remain unchallenged. For this reason, this aspect of the motion is denied as well.

/ / /

### F. Summary

Defendants Motion in Limine No. 1 is denied except with respect to the Supplemental Disclosure Statement, which is excluded based on Plaintiffs' statement that they do not intend to introduce the statement at trial. (Dkt.#211 at 2)

## II. Defendants' Motion in Limine No. 6 Regarding Evidence Relating to Unplead Claims of Civil Conspiracy and Aiding and Abetting

At the Final Pretrial Conference, the Court denied Defendants' Motion in Limine No. 6 Regarding Evidence Relating to Unplead Claims of Civil Conspiracy and Aiding and Abetting (Dkt.#307) as moot. However, it also gave counsel the opportunity to submit supplemental briefing, which is discussed below.

In its original Motion in Limine, Defendants argued that Plaintiffs should not be allowed to admit evidence regarding civil conspiracy and aiding and abetting because these claims were never plead nor disclosed. Plaintiffs have submitted proposed jury instructions regarding both claims.

At the Final Pretrial Conference, Plaintiffs explained that they were not alleging that "aiding and abetting" or "conspiracy" were separate causes of action, but rather that they are theories of derivative liability for other existing causes of action. Their supplemental memorandum supports this theory. (Dkt.#353) Plaintiffs clarify that they are merely seeking jury instructions that "follow current Arizona law and Arizona law that is more than 65 years old: tortfeasors can conspire together and aid and abet each other to commit substantive torts such as tortious interference, defamation and injurious falsehood." They cite to Baker ex re. Hall Brake Supply, Inc. v. Stewart Title & Trust, Inc., 197 Ariz. 535, 542, 5 P.3d 249, 256 (App. 2000), Ramirez v. Chavez, 71 Ariz. 239, 226 P.2d 143 (1951), and the Restatement (Second) of Torts § 876.

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." Applied Equipment Corp. v. Litton

1   <u>Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 510. 860 P.2d 454, 478 (Cal. 1994) (en banc).[1] Conspiracy,

2   like aiding and abetting, are not independent torts, but (as Plaintiffs suggest) theories that

3   create derivative liability among tortfeasors.  Thus, it was not necessary for Plaintiffs to plead

4   them as separate causes of action in their complaint.

5       Here, it appears that Plaintiffs sufficiently put Defendants on notice that conspiracy

6   was a theory of liability that would be associated with its tortious interference claims.

7   Plaintiffs specifically used the word "conspiracy" at least once in the context of its tortious

8   interference claim in the Second Consolidated Amended Complaint.  (Dkt.#202 ¶ 138(b).

9   They also incorporated through reference a number of factual allegations relating to

10  concerted action in ¶ 136.  Similarly, they incorporated through reference a number of

11  allegations related to concerted action in their defamation and injurious falsehood claims in

12  ¶¶ 166, 172.  The Court finds that these allegations were sufficient to put Defendants on

13  notice that Plaintiffs were seeking to impose derivative liability for both torts.  For this

14  reason, the Court reaffirms its earlier ruling and denies this motion.

15      **Accordingly,**

16      **IT IS HEREBY ORDERED** denying Defendants' Motion in Limine No. 1 to

17  Exclude Plaintiffs' Evidence of Damages (Dkt.#312), except with respect to the

18  Supplemental Disclosure Statement, which is excluded based on Plaintiffs' statement that

19  they do not intend to introduce the statement at trial.  (Dkt.#211 at 2)

20      **IT IS FURTHER ORDERED** affirming the Court's earlier ruling regarding

21  Defendants' Motion in Limine No. 6 Regarding Evidence Relating to Unplead Claims of

22  Civil Conspiracy and Aiding and Abetting (Dkt.# 307) and denying this motion as moot.

23  Plaintiffs are not alleging that conspiracy and aiding and abetting are separate claims, but

24

25          [1] While the Court recognizes that Arizona law applies to this action, the parties have
26  not cited any Arizona case directly on point.  In the apparent absence of any controlling
    Arizona case law on this issue, it is likely that an Arizona court would this California
27  Supreme Court opinion persuasive, particularly since it was issued en banc.

28                                          - 8 -

rather, that they are theories of liability, and these theories of liability have been adequately plead.

DATED this 8th day of October 2009.

Mary H. Murguia
United States District Judge